IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


KENNETH W. EDWARDS,

             Plaintiff,

    v.

CARGILL, INC. dba ROGERS
TERMINAL AND SHIPPING and
CARGILL MARINE AND TERMINAL,
INC. dba ROGERS TERMINAL
AND SHIPPING,

             Defendants.

No. 03:10-CV-1460-HZ

OPINION & ORDER


Stephen L. Brischetto
Attorney at Law
621 SW Morrison Street, Suite 1025
Portland, OR 97205

      Attorney for Plaintiff

Glen P. McClendon
Michael J. Estok
Lindsay Hart Neil & Weigler, LLP
1300 SW Fifth Avenue, Suite 3400
Portland, OR 97201

     Attorneys for Defendants

HERNANDEZ, District Judge:

     Plaintiff Kenneth Edwards brings this employment age discrimination action against Defendants Cargill, Inc. and Cargill Marine and Terminal, Inc. (collectively "Cargill"). Defendants move for summary judgment on all of Plaintiff's claims.  I grant in part and deny in part the motion.

BACKGROUND

     Plaintiff Edwards is a former employee of Rogers Terminal and Shipping ("Rogers"), a business unit of Defendant Cargill Marine and Terminal ("CMT").  As a stevedoring company, Rogers manages the operations of loading and unloading grain cargo ships on behalf of buyers and sellers of grain.  Decl. of Mel Menke Supp. Mot. Summ. J. ("Menke Decl.") ¶ 5.  Art Hayes, general manager of Rogers' Pacific Northwest division, initially recruited Plaintiff to handle workers' compensation claims for Rogers as an independent contractor.  Decl. of Michael Estok Supp. Mot. Summ. J. ("Estok Decl.") Ex. 2 at 8.  Later in 1999, Rogers employed Plaintiff as its Operations Manager to take over some of Hayes' tasks.  Id. at Ex. 3 at 4; Menke Decl. ¶ 10. There is a dispute as to whether Hayes promised Plaintiff that his employment would be secure until he decided to retire.  Plaintiff believed that Cargill would transfer him to another position in the event of layoffs, while Hayes denies making any such promise.  Estok Decl. Ex. 2 at 9; Decl. of Kenneth Edwards Resp. Mot. Summ. J. ("Edwards Decl.") ¶ 3.

During the time Plaintiff worked at Rogers, its business began to decline for a number of reasons. The volume of grain that Rogers handled and its number of customers decreased. Estok Decl. Ex. 3 at 25, 29. Rogers' available customer base also shrank when the cost of stevedoring shifted from the foreign buyers to the local sellers of grain. Id. at 25. In 2005, Hayes alerted Plaintiff to an upcoming "slow period" and "declining exports". Id. at Ex. 4 at 4. The next year, Rogers terminated one of its stevedoring superintendents in Portland and eliminated the position. Id. at Ex. 2 at 6.

In July 2008, Mel Menke, President of Rogers, concluded that the Pacific Northwest region's management staff was excessive compared to the amount of work in that region. Menke Decl. ¶ 15. He decided that eliminating one manager position would cut costs, but still allow Rogers to be adequately staffed. Id. The three managers considered for the reduction in force were Hayes, K.C. Bacon, the local manager for the Tacoma/Seattle operation, and Plaintiff. Id. at ¶ 17. After considering a number of factors, Menke decided to terminate Plaintiff. Id. at ¶ 18. On December 1, 2008, Menke and Rick Calhoun, Chairman of Defendant CMT, told Plaintiff that his position was being eliminated and that his termination was effective that day. Id. at ¶ 23. About three weeks later, on December 22nd, Plaintiff was hired as an operations superintendent with United Grain. Estok Decl. Ex. 3 at 9. Plaintiff's 2011 salary was higher than his prior salary at Cargill, yet Plaintiff continues to seek employment with Cargill. Id. at 10. Since October 2009, Plaintiff has applied for over 140 positions, but has not been rehired by Cargill. Edwards Decl. ¶ 47; Decl. of Shauna Nylund Supp. Mot. Summ. J. ("Nylund Decl.") Ex. 3.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court views inferences drawn from the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. Long v. City & County of Honolulu, 511 F.3d 901, 905 (9th Cir. 2007).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff alleges the following claims against Defendants: (1) Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1); (2) Oregon's age discrimination statute, ORS § 659A.030(1)(a),(b); (3) ORS § 659A.040, discrimination against an employee seeking workers' compensation benefits; (4) the Oregon Family Leave Act, (5) Family Medical Leave

Act, (6) wrongful discharge, (7) Oregon's wage and hour laws, (8) breach of employment

contract, (9) breach of duty of good faith and fair dealing, (10) promissory estoppel, and (11) an

ERISA violation under 29 U.S.C. § 1132(c)(1).  Several of these claims are not at issue for

various reasons.[1]  Therefore, only the following claims remain.

> Claims 1 and 2:  federal and state age discrimination
> Claim 6:  wrongful discharge
> Claim 8:  breach of employment contract
> Claim 9:  breach of duty of good faith and fair dealing
> Claim 11:  ERISA violation

Defendants move for summary judgment on all of these claims.

## I.    Age Discrimination

Plaintiff alleges age discrimination under federal and state laws.  Compl. ¶¶ 22, 24.  The

standard for establishing a prima facie case of age discrimination under federal and Oregon law

is identical.  Henderson v. Jantzen, Inc. 79 Ore. App. 654, 657 (Or. Ct. App. 1986).  Plaintiff

advances two bases for his age discrimination claims:  his termination and Defendants'

subsequent refusal to rehire him.

### A.    Plaintiff's Termination

Plaintiff must first establish a prima facie case of discrimination by either direct or

circumstantial evidence.  "Direct evidence, in the context of an ADEA claim, is defined as

evidence of conduct or statement by persons involved in the decision-making process that may

be viewed as directly reflecting the alleged discriminatory attitude."  Enlow v. Salem-Keizer

Yellow Cab Co., 389 F.3d 802, 812 (9th Cir. 2004) (quotation omitted).  Not every comment

about a worker's age is direct evidence of a discriminatory motive.  "'[S]tray' remarks are

---

[1] Claim seven was dismissed pursuant to a stipulation by the parties.  Dkt. #44.  Plaintiff decided not to pursue his third, fourth and fifth claims.  Pl.'s Mem. Mot. for Leave to File Second Am. Compl., 2, Dkt. #49.  And promissory estoppel, Plaintiff's 10th claim, is not a cause of action, but a type of relief for breach of contract.  Neiss v. Ehlers, 135 Ore. App. 218, 227-28 (Or. App. Ct. 1995).

insufficient to establish discrimination" when the remark is isolated or unrelated to the decision process.  Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir. 1990).

Defendants argue that there is no direct evidence of age discrimination surrounding Plaintiff's discharge.  Defs.' Memo. Supp. Mot. Summ. J. ("Cargill MSJ"), 20.  Plaintiff disagrees and recites 12 incidents as evidence of direct and circumstantial evidence of discrimination.  Pl.'s Resp., 14-15.  It is undisputed that Menke was the decision maker for Plaintiff's termination.  Menke shared his decision with Calhoun, his supervisor, and discussed his decision with Lisa Drake and Shauna Nyland—both in human resources, and Cargill's in-house counsel.  Menke Decl. ¶ 20.  To the extent the incident is conduct or statements by Menke, I will evaluate whether it is direct evidence of discrimination.

In February 2008, Menke drafted a restructuring plan for Defendant CMT, which included Rogers as part of the plan.  Second Brischetto Decl. Opp. Defs.' Mot. Strike ("Second Brischetto Decl.") Ex. A at 2.  Defendants object to this exhibit because Plaintiff had authenticated it with Drake's deposition.  But Drake testified that she had no knowledge of the document.  To cure this problem, Plaintiff submitted deposition testimony from Menke, in which he admits to authoring the restructuring plan.  Id.  Defendants' objection is overruled.  The plan does not contain any comments or conduct by Menke, or anyone else, that directly relate to age discrimination.

Another piece of evidence involves Menke's review and approval of Plaintiff's July 2008 evaluation.  Decl. of Stephen Brischetto Opp. Cargill MSJ ("Brischetto Decl.") Ex. C at 32.  The evaluation was completed by Hayes, Plaintiff's manager, and not Menke.   Even so, the evaluation does not contain any discriminatory remarks.  Hayes praises Plaintiff for his wealth of knowledge and mentions that customers respect Plaintiff for his abilities.  Id.  Plaintiff attempts

6 - OPINION & ORDER

to draw an inference of discrimination because Hayes includes comments about the need for him, Plaintiff, and Bacon to "train the next generation of Rogers" and transfer their "knowledge and experience to the younger management team".  Id.  Menke simply was copied on the email, but regardless, the evaluation is not direct evidence of discrimination.

Plaintiff declares that he participated in meetings in which there were discussions about the need to train the "young management team" or "the next generation" that would eventually replace the current managers.  Edwards Decl. ¶ 28.  Menke, Calhoun, Hayes, Bacon, and Drake were present and "expressed no disagreement with the sentiment".  Id. at ¶ 29.  These types of comments also are not direct evidence of discrimination.  They are simply evidence of a company planning for its future.  I conclude there is no direct evidence of discrimination.

Absent direct evidence, Plaintiff may establish his prima facie case by showing that he was:  (1) a member of the class protected; (2) performing his job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications.  Nidds v. Schindler Elevator Corp., 113 F.3d 912, 917 (9th Cir. 1997).  The requisite degree of proof to establish a prima facie ADEA claim is "minimal and does not even need to rise to the level of a preponderance."  Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994.  Once established, the defendant may rebut the presumption of unlawful discrimination by offering evidence of a legitimate, nondiscriminatory reason for its employment decision.  Id.  "The defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).  The employer's asserted legitimate, nondiscriminatory reason shifts the burden back to the plaintiff to show the employer's offered reason was a pretext for

discrimination.  Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998).  "When evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimum prima facie case."  Wallis, 26 F.3d at 890-91.  The ultimate burden of persuasion that the employer intentionally discriminated against the plaintiff remains at all times with the plaintiff.  Id.

Only the last element, whether Plaintiff was replaced by a substantially younger employee with equal or inferior qualifications, is in dispute.  Cargill MSJ, 20.  Defendants point out that Plaintiff's position as operations manager was eliminated and no replacement occurred. The duties of the position were divided among the remaining employees:  Hayes and three stevedore superintendents, Corby Buswell, Derek Ellett, and James Pan.  Menke Decl. ¶ 29. Hayes was 57, the same age as Plaintiff; Buswell was 51; Ellett was 32; and Pan was 63.  Id.  In a reduction of force termination, "the failure to prove replacement by a younger employee is not necessarily fatal to an age discrimination claim".  Rose v. Wells Fargo & Co., 902 F.2d 1417, 1421 (9th Cir. 1990) (quotation omitted).  Instead Plaintiff must "show through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination."  Id.  Plaintiff's prima facie case is not defeated simply because a replacement was not hired.

Plaintiff cites to several pieces of evidence to show age discrimination surrounding his termination.  In the five-page restructuring plan that Menke authored, he observes a potential problem within CMT.  "Due to the make up of our staff being either inexperienced or more senior management level, we lack immediate middle management succession.  Thus, we should take a phased approach to rolling out the single organizational structure as specific milestones are achieved."  Brischetto Decl. Ex. B at 15.  The plan's objective was to "ensure business

continuity for bulk grain movement while managing a safe and profitable operation."  Id.  There were three listed objectives in the plan:  leadership/accountability, succession planning, and reducing costs.  Id.  Plaintiff particularly points out that Menke proposed that "[c]urrent senior managers will retire or have a RIF executed within the stated time frame."  Id. at 17.  This proposal is one of five others listed under the leadership/accountability objective.  Id.  Under the reducing costs objective, Menke also mentions that the non-stevedoring operations management is too large and a reduction in management will "be more economical as well as more flexible in the changing business environment."  Id. at 18.  This restructuring plan supports Defendants' explanation that Plaintiff's position was eliminated for economic reasons, and not due to Plaintiff's age.

Plaintiff cites to another document that produced by Defendants during discovery.  Brischetto Decl. Ex. B at 12.  The document is a chart listing the age, race, years of service, and salary of six Rogers employees.  Id.  Defendants object to this document because Plaintiff attempted to authenticate the document with someone who had no knowledge of the document.  Cargill MSJ Reply, 5.  Plaintiff inquired about the document at Drake's deposition, but she could not recall the documents.  The objection is sustained.

Plaintiff recounts comments made in 2001 by Gerry Brown, then the president of Rogers and in 2007 by Calhoun, the chairman of Cargill Marine Terminal.  Edwards Decl. ¶¶ 27, 34.  Brown told him "Cargill gets rid of and fires older workers" by stopping pay raises, changing the duties, and laying off the employee "under the guise of a 'company reorganization'".  Id. at ¶ 27.  Calhoun joked that an older manager wore a "Jack LaLayne jump suit" and asked "Why do we retain older managers?" at a management meeting.  Id. at ¶ 34.  Brown retired from Cargill in 2005 and his comment pre-dates Plaintiff's termination by seven years.  Calhoun's comment was

a stray remark and does not show a pattern or motive for age discrimination.  Neither of these

comments was related to Plaintiff's termination, nor do they create an inference of age

discrimination.  See Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. Cal. 1993) ("we don't

necessarily like grey hair" and "We don't want unpromotable fifty-year olds around" were stray

remarks that do not create an inference of age discrimination).

Plaintiff next presents emails in which succession planning and the training of younger

employees is encouraged.  Edwards Decl. ¶ 31; Brischetto Decl. Ex. C at 16, 22, 24.  For

example, in one email, Hayes writes, "we will all sit down and determine what changes we are

going to have to make within the whole team to conform to the needs of providing growth to our

younger employees[.]"  Id. at 24.  Plaintiff declares that he was not provided with training

opportunities, but does not specify any opportunity that he was denied.  Edwards Decl. ¶ 30.  On

the contrary, Cargill provides training opportunities to all employees at all stages of their careers.

Supp. Menke Decl. ¶ 8.  Plaintiff was trained in spot-bidding and marketing on a business trip to

Asia.  Id.  It is not surprising that a younger employee would need different, or more training that

a more senior employee.  As noted earlier, evidence of Defendants' succession planning for the

future survival of the business does not indicate age discrimination.

Plaintiff's other evidence is wholly unrelated to Plaintiff's termination and thus, does not

show that his termination occurred under circumstances that infer age discrimination.  The other

evidence includes five instances in which younger employees were offered new positions in the

face of termination, Cargill's policy of permitting early retirement, and in 2006, the forced early

retirement of Ken McLaughlin, who was president a subsidiary of Cargill.  Pl.'s Resp., 16.  Only

one of these employees worked for Rogers, but his position was not eliminated.  Supp. Menke

Decl. ¶ 9.  At least two of these employees did not work for CMT and Cargill is unaware of the

circumstances of the other two individuals.  Id. Cargill argues that five instances in a company of

138,000 employees are not statistically relevant.  Cargill MSJ Reply, 9.  I agree.  In summary,

Plaintiff does not have sufficient evidence to establish a prima facie case for age discrimination

regarding his termination.  Defendant's motion is granted on this issue.

However, even if there were sufficient evidence for Plaintiff to establish a prima facie

case for age discrimination, the burden would shift to Defendants to provide a legitimate,

nondiscriminatory reason for the termination.  Defendants assert that Plaintiff was laid off

because the amount of work did not justify the size of the management staff in Portland.  There

were two managers, Hayes and Plaintiff, supervising three stevedore superintendents.  Menke

Decl. ¶ 18.  The stevedore superintendent positions could not be eliminated because a minimum

of three people is needed to staff a week of work.  Id. at ¶ 16.  Menke was left to decide between

terminating Hayes or Plaintiff.  Id. at ¶ 18.  He decided that Plaintiff should be terminated for

several reasons:  (1) Plaintiff's position was a management position in Portland, as opposed to

Hayes' general manager position over the entire Pacific Northwest, (2) Hayes had performed all

the duties of Plaintiff's position before Plaintiff was hired, and (3) Hayes had substantial

connections within the industry, particularly in Asia.  Id.  Rogers' business was also declining,

and not expected to recover in the future.  Between 1999 (the year Plaintiff was hired) and 2007,

Rogers had averaged 4.5 million tons of grain cargo work.  Menke Decl. ¶ 12.  But by 2008, that

had dropped to 2.5 million tons.  Id.  Rogers' market share had also decreased from 20-30% to

13% in 2008.[2]  Id.

Defendants' nondiscriminatory, reduction in force reason shifts the burden back to

Plaintiff.  By presenting this nondiscriminatory reason, the presumption of discrimination

---

[2] The amount of work has not rebounded since 2008.  Rogers had 2.7 million tons of grain cargo work in 2009 and 2.8 million tons in 2010.  Id.  at ¶ 14.  Its market share remains as it was in 2008.  Id.

disappears, and Plaintiff has the burden to show that the offered reason is false. Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996). Such evidence of pretext must be "specific" and "substantial". Godwin, 150 F.3d at 1220 (citing Bradley, 104 F.3d at 270). The evidence must also be "in addition to that which was sufficient for [plaintiff's] prima facie case in order to rebut the defendant's showing." Id. Here, because there is no direct evidence of discrimination, Plaintiff "may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." Id. at 1222.

Plaintiff relies on the same evidence discussed earlier from his prima facie case to show pretext. Pl.'s Resp., 17. As a matter of law, this evidence is insufficient to rebut Defendants' showing. Plaintiff also relies on four arguments to create a genuine dispute. First, Plaintiff argues that Menke's decision to terminate Plaintiff occurred in July 2008, but that he actually had plans to terminate sooner, as evidenced by the 2008 restructuring plan in which a reduction in force was proposed. Id. The restructuring plan only proposed a reduction in force, not that Plaintiff's position specifically should be eliminated. This argument is insufficient to create a genuine issue of material fact.

Plaintiff's second argument also relies on a statement from the restructuring plan. One reason Menke eliminated Plaintiff's position was because it was a "middle-management position in Portland" while Hayes' position was a general management position for the Pacific Northwest region. The restructuring plan includes a statement that CMT "lack[s] immediate middle management succession." Brischetto Decl. Ex. B at 15. A lack of middle management succession within an entire company is different than having an extraneous middle management

position for a specific location.  Additionally, the middle management reason was just one of three considerations for terminating Plaintiff.  This argument fails to create a genuine issue.

Third, Plaintiff argues that if Defendants were experiencing a decline in market share and grain volumes, then Plaintiff's "skills and experience should have been the most critical" to preserve.  Pl.'s Resp., 18.  Defendants have already conceded that Plaintiff's performance was not an issue in the termination decision.  Furthermore, one of the considerations in Plaintiff's termination decision was that Hayes had been with Rogers since 1979—20 years longer than Plaintiff, had extensive contacts in professional organizations, and had key relationships with contacts in Asia.  Menke Decl. ¶ 18.  Plaintiff's opinion that he was more qualified than Hayes does not create a genuine issue.

Finally, Plaintiff argues that Defendants' interrogatories state that Plaintiff's layoff was part of a "large, company-wide reduction in force" is inconsistent with Menke's declaration in which he describes his decision to layoff Plaintiff.  Pl.'s Resp., 18.  Menke does not declare that only Plaintiff's position was eliminated.  His declaration is an explanation of how he decided to eliminate Plaintiff's position specifically.  There is no inconsistency between the interrogatories and Menke's declaration.

Plaintiff has failed to rebut Defendants' showing of a nondiscriminatory reason for terminating Plaintiff.  None of Plaintiff's four arguments create an inconsistency or make unbelievable Defendants' reason for the termination.  Because there is no evidence of pretext, I grant Defendant's motion on the federal and state age discrimination claims based on Plaintiff's termination.

/ / /

/ / /

13 - OPINION & ORDER

B.      Refusals to Hire

Plaintiff's age discrimination claim is also based on allegations that Cargill refused to hire Plaintiff after his termination because of his age.  Plaintiff has applied for over 140 jobs since his termination, though he was not qualified for all 140 jobs.[3]  After numerous discovery spats, Plaintiff narrowed this allegation to positions for which he felt well qualified.  Edwards Decl. ¶ 50.  Although discovery had closed already, I ordered additional discovery into these specific positions.  March 5, 2012 Order, Dkt. #86.  I allowed Plaintiff the chance supplement his brief with the evidence from the additional discovery, and allowed Defendants the opportunity to respond to any supplemental briefing.  March 28, 2012 Order, Dkt. #96.  The issue is now fully briefed before me.

The analysis of an age discrimination claim that was previously discussed is still applicable here.  There is no direct evidence of discrimination.  Therefore, Plaintiff must establish his prima facie case by showing that:  (1) he was a member of the class protected; (2) he was qualified to fill the position; (3) he was not hired; and (4) a substantially younger employee with equal or inferior qualifications was hired.  Neukom v. Columbia Steel Casting Co., No. 05-924-JE, 2006 U.S. Dist. LEXIS 20594 at *31 (D. Or. April 17, 2006).

There are 10 positions at issue in this claim, based on Plaintiff's narrowing of the refusal to hire claim.  Edwards Decl. ¶ 50.  Three of the positions that were initially advertised were cancelled.  Brischetto Decl. Supp. Br. Ex. D.  Of the remaining seven positions, the first, second, and third elements are not in dispute for any of these positions.  There are two requirements in the last element for Plaintiff's prima facie case, "substantially younger" and "equal or inferior qualifications".  A difference in 10 years in age does not give rise to an inference of age discrimination.  See Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1209 (9th Cir. 2008)

---

[3] Plaintiff applied for positions that required special skills, such as attorney positions.

("That the average age of the workers hired during the two-year period is approximately nine and a half years younger than the average age of those laid off--38.75 versus 48.4 years--also fails to justify an inference of age discrimination."). Plaintiff created an online profile with Cargill's job posting program in October 2009. Nylund Decl. Ex. 3 at 1. Plaintiff would have been 58 years old in 2009. With this consideration, individuals who were older than 48 years are not substantially younger than Plaintiff. Excluding these hired individuals, the following positions remain in dispute: (1) general manager in Houston, (2) vessel operations supervisor, (3) production supervisor II (2 positions), and (4) regional continuous improvement lead. Brischetto Decl. Supp. Br. Ex. D.

For all of the positions, there is a star next to Plaintiff's name, indicating that he met basic requirements for the positions. Id. With the exception of one of the production supervisor II positions, Defendants argue that a more qualified candidate was selected. Id. Defendant specifically compares the qualifications of Plaintiff and the person hired only for the general manager and regional continuous lead positions. Cargill MSJ Reply, 16. There is a genuine dispute of material fact as to whether a person of equal or inferior qualifications was hired over Plaintiff for these five positions. Defendants further argue that Defendants' minimum salary requirement of $125,000 was out of line with several of the remaining five positions. Brischetto Decl. Supp. Br. Ex. E. Plaintiff's high salary minimum is a legitimate, non-discriminatory reason for not hiring Plaintiff. Plaintiff disputes this fact. He had indicated to a talent recruiter that he was interested in jobs that paid substantially less, in the $45,000 range. Supp. Edwards Decl. ¶ 11. Defendants failed to show that there is no genuine issue of material fact concerning the last element of Plaintiff's prima facie case, whether a substantially younger and less qualified

person was hired, and whether the salary minimum was a pretext. Defendant's motion is denied

for Plaintiff's federal and state age discrimination claim based on refusal to hire.

## II.    Wrongful Discharge

Plaintiff alleges wrongful discharge based on his complaints of unlawful conduct by

Defendants. Compl. ¶ 41. "The general rule regarding employment at will is that an employer

may discharge an employee or an employee may quit at any time for any reason." Delaney v.

Taco Time International, Inc., 297 Ore. 10, 14 (Or. 1984). Wrongful discharge is an exception to

this general rule. Id. The claim of wrongful discharge simply involves a discharge that is

wrongful. Moustachetti v. State, 319 Ore. 319, 325 (Or. 1994). There are three categories of

wrongful discharge cases: (1) plaintiff was discharged for fulfilling a societal obligation, such as

serving jury duty; (2) plaintiff was discharged for pursuing a private statutory right of important

public interest, e.g., filing a workers' compensation claim; and (3) plaintiff is discharged for

advocating for societal interests for which there is no adequate existing remedy, e.g., an

employee complains about unsafe working conditions. Id. at 16-17. It is apparent from this last

category of cases that "wrongful discharge is an interstitial tort, designed to fill a remedial gap

where a discharge in violation of public policy would be left unvindicated". Dunwoody v.

Handskill Corp., 185 Ore. App. 605, 612 (Or. Ct. App. 2003). A remedy is "adequate" if the

statutes demonstrate "the legislature's intent to identify and provide an adequate remedy for all

the harm suffered by plaintiff or of a legislative intent to supersede this common law remedy."

Id.

Plaintiff alleges the following unlawful conduct by Defendants influenced Defendants'

decision to terminate him: (1) a 2003 complaint to Cargill's security department that Hayes

claimed personal expenses as business expenses, Edwards Decl. ¶ 19; (2) a 2005 complaint to

Cargill's ethics hotline and security department that Hayes falsified OSHA injury logs, id. at ¶ 20; (3) refusing to follow Hayes' orders to not preference hire[4] individuals who had filed workers' compensation claims in the past, id. at ¶¶ 13, 14, 26; (4) refusing Hayes' request to give false testimony at workers' compensation hearings, id. at ¶ 17; and (5) recommending to Menke, Hayes, and Calhoun that in-house counsel should determine whether a proposed practice would violate antitrust laws, id. at ¶ 25.

Defendant argues that Plaintiff's claim fails because (1) Plaintiff's actions are not protected because they do not implicate an important societal interest, (2) there is no causal connection between Plaintiff's actions and his termination, and (3) the wrongful discharge claim is precluded by other statutory remedies. Cargill MSJ, 27-29.

Defendant's first argument fails. Plaintiff's complaints of falsified OSHA logs, his refusal to not preference hire individuals who had filed workers' compensation claims, and his refusal to give false testimony both concern important interests to society because they involve legal obligations established to protect workers. As for the lack of causal connection, Defendants argue that only Menke made the decision to terminate Plaintiff. Calhoun simply agreed with Menke and Hayes had no input in the decision. All of Plaintiff's complaints primarily involve Hayes. Menke denied knowledge about Plaintiff's complaints regarding various "workplace issues", but admits awareness of the ethics hotline complaint regarding the OSHA logs and the issue of preference hiring. Menke Decl. ¶ 31(c), (e). However, Menke denies knowledge about the pressure to give false testimony because the incident pre-dates his employment at Cargill. Supp. Menke Decl. ¶ 5(d). Regardless, Menke asserts that none of these incidents factored into his decision to terminate Plaintiff. Id.; Menke Decl. ¶ 31(e). There is a

---

[4] Preference hiring derives from collective bargaining agreements. Edwards Decl. ¶ 12. Rogers could identify specific individuals to hire, i.e., "preference hires", rather than hiring from a general "hiring hall list". Id.

genuine dispute of material fact as to whether Menke considered Plaintiff's complaints regarding

the OSHA records or preference hiring in his decision to terminate Plaintiff. Finally, there is no

existing adequate remedy for Plaintiff's wrongful discharge claim based on his complaints that

Defendants falsified OSHA logs or his refusal to not preference hire individuals who had filed

workers' compensation claims. Plaintiff's age discrimination claims would address a different

kind of harm and remedy. If Plaintiff had stated a retaliation claim in addition to his other

claims, perhaps the overlap would be impermissible. See Whitley v. City of Portland, 654 F.

Supp. 2d 1194, 1224-1225 (D. Or. 2009). But that is not the case here. Defendants' motion on

Plaintiff's wrongful termination claim based on the OSHA and preference hiring issues is denied.

## III.    Breach of Employment Contract

Plaintiff claims that Defendants breached an "oral contract" that provided Plaintiff

employment until he decided to retire. Compl. ¶ 51; Pl.'s Resp., 23. During negotiations, Hayes

promised Plaintiff that if he came to work for Cargill, his employment would be secure until he

decided to retire. Edwards Decl. ¶ 3. Cargill would transfer him if necessary in the event of

layoffs or downsizing. Id. Hayes denies making any such promises. Nevertheless, Defendants

argue that there can be no breach of employment contract because (1) there was no mutual

acceptance, (2) if there was a contract, it is void by the statute of frauds, and (3) Plaintiff's

application expressly states that his employment is at will. Cargill MSJ, 30-31.

Defendants' first argues that there was no mutual acceptance of a contract that provided

Plaintiff with open-ended employment for as long as he wished. Even if Hayes had made a

promise guaranteeing employment until Plaintiff retired, such statements during the recruitment

process do not form a contract. See Wooton v. Viking Distributing Co., 136 Ore. App. 56, 60

(Or. Ct. App. 1995); Butler v. Portland General Electric Co., 748 F. Supp. 783, 792 (D. Or.

1990).  In <u>Wooton</u>, during the interview, plaintiff testified that "'it was sort of generally agreed that I was already almost 40, that I could work there long term and retire from the company if all went well and if everyone was pleased with my work[.]'"  136 Ore. App. at 60.  The court found that plaintiff's recollection was nothing more than "mutual hope".  <u>Id.</u>  Similarly in <u>Butler</u>, statements that plaintiff "could expect employment with PGE as long as he desired", even when plaintiff was considering outside offers of employment some years later, did not create a contract for long-term employment.  <u>Butler</u>, 748 F. Supp. at 792.

Assuming *arguendo* that Hayes had made the promise, Defendants argue that the promise was disclaimed in Plaintiff's job application and in the employee handbook.  Cargill MSJ, 24.  In March 1999, Plaintiff signed a job application, which stated that he understood that the employment was "at will" and that "[a]ny oral statements that contradict this employment at will relationship are disavowed by Cargill, Incorporated and should not be relied upon."  Decl. Shauna Nyland Supp. Cargill MSJ ("Nyland Decl.") Ex. 2 at 4.  Plaintiff argues that the application is not a contract because Edwards was not hired until May 1999 and that he negotiated employment terms with Hayes after he had signed the application.  Edwards Decl. ¶ 5.  The language in the application clearly put Plaintiff on notice that Cargill was offering at will employment.

Plaintiff also received Cargill's employee handbook, which expressly states that the employment is at will.  Edwards Decl. Ex. A at 2.  The "Employment At-Will Statement" appears prominently on the second page of the handbook underneath the welcome paragraph.  <u>Id.</u>  "This handbook is neither a guarantee of employment nor an employment contract for any specific period".  <u>Id.</u>  However, the president or a vice president of the company had the authority to enter into an agreement for employment for a specified amount of time.  <u>Id.</u>  There is

no evidence that Hayes was a vice president of Cargill in 2008. There is only evidence that

Plaintiff believed that Hayes was a vice president. Edwards Decl. ¶ 7.

Finally, the statute of frauds is a bar to the "oral contract", assuming that it did indeed

exist. An agreement that cannot be performed within a year by its terms is void unless it is

memorialized in writing. ORS § 41.580(1). Plaintiff concedes that the statute of frauds applies,

but that it should be set aside due to partial performance. Pl.'s Resp., 27. The doctrine of partial

performance bars the statute of frauds if (1) "there is conduct corroborating and unequivocally

referable to the oral agreement sufficient to satisfy the policy of the statute designed to minimize

perjured claims and the opportunity for fraud" and (2) if equitable grounds exist for enforcing the

contract, such as estoppel, unjust enrichment, or fraud. Stevens v. Good Samaritan Hosp. &

Med. Ctr., 264 Ore. 200, 207 (Or. 1972). Plaintiff's lone evidence of the first element is his nine

years of employment with Defendants. There is no evidence of conduct by Defendants to

indicate that Plaintiff's employment was anything but at will. For the second element, Plaintiff

argues that he relied on the promise to his detriment by quitting his job, stopping claims work for

Defendants, and stopped offering his services to other potential employers during the time he

worked for Defendants. Edwards Decl. ¶ 6. This evidence only shows what would typically

happen to any individual who switches jobs.

Plaintiff's claim also suffers from the lack of consideration for the promise of

employment until retirement. There is no indication the Plaintiff provided consideration that

changed his offer of at will employment into one that provided security until he chose to retire.

For a multitude of reasons, I find that Plaintiff's employment with Defendants was at will.

Defendants' motion is granted for Plaintiff's breach of contract claim. Defendant's motion is

also granted on the claim for promissory estoppel because there is no breach of contract.

**IV.    Breach of Duty of Good Faith and Fair Dealing**

Plaintiff claims that Defendants breached their duty of good faith and fair dealing by

when they did not provide secure employment until he retired.  Compl. ¶¶ 52-53.  Defendants

argue that because Plaintiff's employment was at will, there is no employment contract, and

there can be no breach of the duty of good faith and fair dealing in the performance of the

contract.  Plaintiff does not respond to this argument.  Because Plaintiff's employment is at will,

Defendants' motion is granted.

**V.    ERISA**

Plaintiff claims that Defendants failed to respond to his December 30, 2008 request for

plan documents in a timely manner.  Compl. ¶¶ 58-59.  The ERISA statute requires a plan

administrator to mail the material requested to the plan participant's last known address within

30 days of the request.  29 U.S.C. § 1132(c)(1).  A court may in its discretion award damages of

up to $100 per day and other relief as necessary for noncompliance.  Id.

Plaintiff made a written request for information on December 30th.  Edwards Decl. Ex. E

at 1.  In the letter, Plaintiff requests "plan documents" for his dental and vision if the plan would

change on January 1, 2009.  Id.  Plaintiff also asked whether his health care would be covered

under Unicare PPO or Cargill National PPO; and if under the latter, to "send all details."  Id.

Plaintiff only disputes that he did not receive information about his health care plan.  Edwards

Decl. ¶¶ 54-55; Pl.'s Resp., 33.

Defendants first argue that Plaintiff did not request "plan documents" expressly in his

December 30th letter, and thus there is no violation.  I disagree.  Viewing the facts in the light

favorable to Plaintiff, a request to "send all details" about a plan could be interpreted to include a

request for plan documents.  Second, Defendants argue that on February 5, 2009, Blue Cross

Blue Shield ("BCBS") records show that it mailed a plan description to Plaintiff's home address. Declaration of Andi Ashlin Supp. Cargill MSJ ("Ashlin Decl.") ¶12, Ex. 5 at 2.  The February 5th mailing is slightly more than 30 days of the December 30th request.  Defendant's motion is denied.

CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment (#54) is granted in part and denied in part as follows:

> Claims 1 and 2 – Age Discrimination: based on Plaintiff's termination, granted; based on the refusal to hire, denied;
> Claim 6 – Wrongful Discharge: denied;
> Claim 8 – Breach of Contract: granted;
> Claim 9 – Breach of Duty of Good Faith and Fair Dealing: granted;
> Claim 11 – ERISA: denied.

Claims three, four, five, and ten are also dismissed.

IT IS SO ORDERED.

Dated this __8th___ day of May, 2012.

/s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge